In the Matter of the Judicial Settlement of the Account of Proceedings of MILTON J. BACH and Another, as Executors, etc., of JEROME B. SCOFIELD, Deceased, Appellants.

THOMAS D. HANLEY, Respondent.

First Department, February 3, 1928.

Contracts — construction — claim against estate of testator based on commissions — testator acted as selling agent for certain mills and employed salesmen on commission to procure orders — first contract with claimant was for one-half of net amount received on sales from new houses brought in by claimant as testator's customers — later testator entered into joint venture with others for purchase and sale of merchandise — two businesses were disassociated and no money was invested in former business — second contract made after joint venture was entered into gave claimant twenty per cent of net profits on all commissions received by testator — testator withdrew from joint venture with profit of $50,000 — claimant is not entitled to commission thereon.

The claimant entered the employ of the testator under a contract by which the testator agreed to pay him one-half of the net amount of all commissions received by the testator as selling agent for mills whose output the claimant could procure for the testator to sell. The testator's business was that of selling agent on commission and that business was done through salesmen who also were paid a commission. Testator carried no stock except samples and had little invested in the business. After the first contract was made with claimant, testator entered into a joint venture with other persons and invested considerable money therein. This joint venture had for its purpose the purchase outright and sale of goods. Later the testator entered into a new contract with claimant whereby he agreed to pay claimant twenty per cent of the net profits on all the commissions made on the sale of goods for all the mills that testator represented. The testator withdrew from the joint venture with a profit of $50,000.

A proper construction of the contract between the testator and the claimant is that the testator kept the two businesses separate and that the contract with claimant related entirely to testator's business as selling agent for mills and did not include his joint venture. Therefore, the claimant is not entitled to twenty per cent of the profit that the testator made in the joint venture.

APPEAL by Milton J. Bach and another from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said Surrogate's Court on the 10th day of March, 1927.

*Isaac H. Levy* of counsel [*Milton J. Bach* with him on the brief; *Battle, Miller, Levy & Van Tine,* attorneys], for the appellants.

*David L. Podell* of counsel [*Myron Kommel* with him on the brief], for the respondent.

MARTIN, J. Prior to his death on December 31, 1923, Jerome B. Scofield was engaged in business under the name of Jerome B. Scofield, as a sales agent for various woolen mills. In that business he assisted the mills in designing merchandise, maintained offices in New York and in Chicago, employed various salesmen, either upon a salary or a commission basis, and sold the output of the mills that he represented. Scofield carried no stock of merchandise, except the samples that were used in making the sales. He had no investment in the business outside of the office furniture and a bank balance required for current expenses. He did not collect from customers of the mills, the billing and collecting being done by the mills. For his services Scofield received a commission on sales.

In October, 1922, Scofield entered into a separate joint venture with Louis Surut and Charles J. Webb, pursuant to which the parties purchased a large amount of merchandise outright. This merchandise was sold through a corporation controlled by Louis Surut, known as Woolen Corporation of America.

In April, 1923, these parties purchased woolens from the government, for which they paid in excess of the sum of $1,000,000, and this merchandise in turn was sold through the Woolen Corporation of America. To this joint venture Jerome B. Scofield and his brother, Herbert F. Scofield, jointly contributed certain securities and about $100,000. The securities which had been deposited were not returned until after the death of Jerome B. Scofield. Twenty per cent of the profits made in this joint venture is claimed by Thomas D. Hanley.

The claimant Hanley entered the employ of Scofield in February, 1922. During that year his services consisted in soliciting the accounts of new mills, the output of which was to be sold by Scofield. For these services he was to receive one-half of the net amount derived from the commissions received upon the sale of the output of the new mills obtained through his efforts.

The claim recited that during the year 1922 he was to receive " the entire profits of my department of the business." Although the firm employed many outside salesmen, these men worked on a straight commission basis and knew nothing about Scofield's business dealings. The only man besides Jerome B. Scofield and Hanley who knew the inner workings of the organization was Herbert F. Scofield, a brother of the deceased and an executor of

the estate. He knew the details of Hanley's arrangements with the deceased. Those arrangements were oral. When Jerome Scofield died, the claimant looked to Herbert Scofield to acknowledge his claims. Herbert Scofield denied the validity of the claims.

Mr. Hanley then filed a claim with the executors for profits due him under his alleged arrangements with the deceased during the years 1922 and 1923. This was rejected by the executors and thereafter objections were filed to their accounts. The objections were referred to a referee, who allowed the claim in part and rejected it in part. The referee's report and findings were in all respects confirmed by the surrogate before whom the motion to confirm was argued. It is from the part of the surrogate's decree which directs payment to claimant that the executors appeal.

There were two separate and distinct contracts with the deceased during the year 1922. The first contract ran from February to October. The terms of this contract were admitted by Herbert Scofield. No claim was made against the estate under it. Jerome Scofield made a new arrangement with claimant to begin in October, 1922, to cover the balance of that year. The referee properly held that Hanley was paid in full for the year 1922 and had no claim.

The claim for the year 1923 was allowed by the referee. There appear to be but four items which constitute the judgment thereon for $10,999.90. There is no contest with reference to three small items. One of $300 represented twenty per cent of moneys withdrawn by Scofield at the rate of $500 per month for traveling expenses and credited to Scofield's personal account, apparently for the purpose of reducing income tax. At the time of his death he had not accounted to Hanley for the months of October, November and December to the extent of this $300, and, therefore, his estate owed that amount. The next item which is not disputed was the amount due Hanley for his part of the sales of ends or remnants, which it was admitted amounted to $300. There was also a balance due on account of services of Hanley in winding up the estate, amounting to $399.90.

The item in dispute is one of $10,000, or twenty per cent of the $50,000 which decedent received as his share of the profits of the joint venture.

The claimant produced two adverse witnesses to establish his right to the same. Both of these witnesses testified in effect that Hanley had no claim to any such amount. The witness David E. Weinberger, an accountant, testified that decedent told him that Hanley was to receive twenty per cent of certain profits only. He said: " * * * he told me that he had an arrangement whereby

his profits as selling agent, which were reflected by the books of account, which we kept in his office, be distributed 20% to Mr. Hanley and there were other arrangements which didn't affect Mr. Hanley. That was the whole talk."

Herbert Scofield testified that he had a talk with his brother " early in January of 1923, during which he told me that he offered Hanley a 20% share of the net profits of the commissions on the goods they sold for all their mills." He testified further: " Q. And that was to cover what year? A. That was to cover 1923. He said he offered it to Hanley and Hanley first demurred, and brother said he could still continue the old arrangement in which he was to share only in the commissions of the mills he had brought into the organization, but Hanley finally accepted my brother's proposition. Q. Twenty per cent of all the profits? A. Twenty per cent of all the commissions of the mills they represented."

The referee allowed twenty per cent of the amount made by the decedent as his profit in the joint venture, not upon the evidence of Scofield and Weinberger, but upon Hanley's testimony that he had solicited orders for the sale of goods of a corporation known as the Woolen Corporation of America. This joint venture appears to have been an independent business venture which Scofield entered into in October, 1922. It was in existence before the contract of 1922 was made with Hanley. In November, 1923, Scofield decided to withdraw from it and was allowed to withdraw everything he had put into it, taking $50,000 as his share of the profits. That $50,000 was deposited in his personal account.

The witness Surut testified that Scofield would have had to share in any loss connected with the transactions out of which this $50,000 arose. Hanley asserts, however, that this $50,000 was a matter within his contract with Scofield.

The decedent's brother was familiar with this transaction, participating in it to the extent of contributing $19,000 and some securities to his brother; and when the matter was finally settled, Herbert Scofield received $5,000 as his profit from his brother.

It is contended that this Woolen Corporation of America was nothing more than a part of Jerome Scofield's business. That contention was not sustained for the reason that the ownership of the other two joint ventures was such that they could have proceeded without the aid of Jerome Scofield.

It is also asserted that the Woolen Corporation of America had Scofield's agents selling its goods, and that these agents were working for and paid by Scofield. Hanley is one of the agents who says he was on the road trying to sell these goods, but no sales were shown by Hanley. As to one bill of goods sold by the other agent,

he was paid by the Woolen Corporation of America for his services. That payment to the other agent was not made through the Scofield organization.

Furthermore, such commissions for the sale of goods would not amount to $50,000, even if all the sales of the Woolen Corporation of America were credited to the Scofield organization. The $50,000 was not any part of the commissions earned by Scofield in which Hanley was entitled to share.

The referee in his opinion indicated that he allowed this $10,000 claim because it is contrary to all reason to say that Hanley would have consented to work or that Jerome Scofield would have asked him to give up his time in working to sell the merchandise if he were not to participate in the profits, the same as he did in every other business transaction of Scofield's with which he was connected during the year 1923. But, as indicated above, the proof does not support the claim as to the item of $10,000.

The decree should be modified by reducing the amount directed to be paid to the respondent Hanley to the sum of $999.90, and as modified affirmed, with costs to the appellants.

DOWLING, P. J., FINCH, MCAVOY and O'MALLEY, JJ., concur.

Decree modified by reducing the amount directed to be paid to the respondent Hanley to the sum of $999.90, and as so modified affirmed, with costs to the appellants. Settle order on notice.